# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**MAR-BOW VALUE PARTNERS, LLC,**

     **Appellant,**

**v.**
                                    **Civil Action No. 3:16cv799**
                                             **(*"Mar-Bow II"*)**

**MCKINSEY RECOVERY &**
**TRANSFORMATION SERVICES US, LLC,**

     **Appellee.**

### MEMORANDUM OPINION

This matter comes before the Court on Appellant Mar-Bow Value Partners, LLC's

("Mar-Bow") appeal from several orders[1] of the United States Bankruptcy Court for the Eastern

District of Virginia (the "Bankruptcy Court"), and Appellee McKinsey Recovery &

Transformation Services US, LLC's ("McKinsey") Motion to Dismiss Appeal of Mar-Bow

Value Partners, LLC for Lack of Standing (the "Motion to Dismiss"), (ECF No. 36). Mar-Bow

---

[1] The appeals in this case will be referred to as "*Mar-Bow II*." A different case pends in which Mar-Bow has filed an appeal of other rulings of the Bankruptcy Court. *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs.*, (*Mar-Bow I*) No. 3:16cv612. The Memorandum Opinion in *Mar-Bow I* (the "*Mar-Bow I* Memorandum Opinion") addresses Mar-Bow's appeal of the Bankruptcy Court's rulings on Mar-Bow's objections regarding the Reorganization Plan and Mar-Bow's Motion to Compel Compliance with Rule 2014. This Memorandum Opinion addresses Mar-Bow's appeal of the Bankruptcy Court's grant of McKinsey's Third Interim and Final Fee Applications.

As discussed more fully below, *see infra* note 38, Mar-Bow filed duplicative notices of appeal as to the Fee Application Rulings in this case and in *Mar-Bow I*. The Court addresses Mar-Bow's appeals of the Fee Application Rulings *only* in this Memorandum Opinion.

Given Mar-Bow's numerous appeals in both cases and the related nature of the facts underlying the appeals, the Court notes throughout this Memorandum Opinion which rulings it assesses in this appeal, and which rulings it evaluates in the Memorandum Opinion in the *Mar-Bow I* Memorandum Opinion.

and McKinsey have filed their respective appellate briefs.[2] (ECF Nos. 45, 49, 51.) Mar-Bow replied to the Motion to Dismiss, (ECF No. 42), and McKinsey replied, (ECF No. 48). The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[3] For the reasons that follow, the Court will grant the motion to dismiss and dismiss Mar-Bow's appeal.

## I. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *accord In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008). In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual

---

[2] Mar-Bow and McKinsey originally filed opening briefs that addressed only Mar-Bow's first Notice of Appeal. (ECF Nos. 18, 32.) After Mar-Bow filed an Amended Notice of Appeal, Mar-Bow and McKinsey filed a joint motion to withdraw and replace their opening briefs, (ECF No. 33), which the Court granted, (ECF No. 35).

[3] "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

## II. Factual Background[4]

Although this appeal arises in the context of a chapter 11 bankruptcy,[5] the dispute before the Court has little to do with the bankruptcy itself. The conflict before the Court is between McKinsey, a professional firm employed by ANR and many of its subsidiaries, the debtors in the underlying bankruptcy action (collectively, the "Debtors"), and Mar-Bow, an unsecured creditor of the Debtors. From the time Mar-Bow first appeared in the bankruptcy action, it objected strenuously and continually to the sufficiency of disclosures that the Bankruptcy Rules require McKinsey, employed to assist with the Debtors' reorganization in this bankruptcy action, to make.[6] Each appeal before the Court attempts to revisit that same issue: whether McKinsey fully complied with Federal Rule of Bankruptcy Procedure 2014.[7]

---

[4] The issues on appeal in this Court have little to do with the facts underlying the bankruptcy case. The Court, therefore, will provide only the factual background necessary to establish context, but will recount the facts relevant to Mar-Bow's appeals in detail. And although the factual background in this case substantially overlaps with the background in *Mar-Bow I*, the Court recounts the relevant factual background in both opinions for clarity's sake.

[5] Chapter 11 permits reorganization of a debtor's business, rather than liquidation of all assets. *See* 11 U.S.C. §§ 1101, *et seq.*

[6] Indeed, the record in the underlying bankruptcy case shows that *all* of Mar-Bow's actions pertained to this one issue: the sufficiency of McKinsey's Rule 2014 disclosures. Even when Mar-Bow succeeded on some motions, it continued challenging what it perceived as a partial denial.

[7] As discussed more fully below, Rule 2014 requires that professionals employed in a bankruptcy action disclose "connections" with, *inter alia*, the debtor, creditor, and any other parties in interest to the bankruptcy. Fed. R. Bankr. P. 2014(a).

## A.    The Parties Relevant to the Instant Appeals

The Debtors—Alpha Natural Resources and many of its subsidiaries—are one of the largest coal suppliers in the United States. The Debtors filed for chapter 11 protection in August 2015 in part because of a drastic downturn in the coal industry.

McKinsey Recovery and Transformation Services ("McKinsey") "is a global, full service restructuring advisory and crisis management firm that . . . support[s] companies through all aspects of recovery and transformation." (First Carmody Decl. 3, App. 3.)  Essentially, McKinsey advises struggling businesses on how to improve their profitability, and helps businesses implement the changes it suggests.  McKinsey has experience providing chapter 11 advisory services, and in helping struggling businesses increase their profitability.

Mar-Bow, as relevant to the bankruptcy action, is an unsecured creditor of the Debtors. On March 23, 2016, almost nine months after the Debtors began their chapter 11 reorganization, Mar-Bow filed a proof of claim[8] in the amount of $1,250,000.00.[9]  The record lacks clarity about the precise nature of Mar-Bow's business, but Mar-Bow is "beneficially owned and funded by" Jay Alix, the founder of the firm "AlixPartners."  (Alix Decl. 1, Mar-Bow Mot. Compel Ex. A, Supp. 1551.)  AlixPartners is a consulting firm that competes with McKinsey in the turnaround consulting business.

---

[8] A proof of claim is the document that a creditor of bankruptcy debtor files in order to register the amount and nature of the debt owed to the creditor.

[9] McKinsey asserts that, after the Debtors retained McKinsey, "Mar-Bow purchased an inconsequential claim. . . . [solely] to litigate against McKinsey RTS." (McKinsey Br. 12, ECF No. 49.)  No party contests, however, that Mar-Bow properly filed a proof of claim and remains an unsecured creditor of the Debtors.

## B.    Background of the Underlying Bankruptcy Case

On August 3, 2015, the Debtors began the bankruptcy proceedings by filing voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, which allows for reorganization—rather than liquidation—of a bankruptcy estate. The Bankruptcy Court consolidated all the petitions for procedural purposes only, meaning that one chapter 11 bankruptcy action was pending.

Three weeks later, on August 24, 2015, the Debtors filed an application in the Bankruptcy Court requesting permission to employ McKinsey as a turnaround advisor for the pendency of the bankruptcy case (the "Retention Application").[10] The Debtors sought to retain McKinsey "as their turnaround advisor . . . to assist the Debtors with the development and refinement of their strategic business plan." (Retention Appl. 2–3, App. 2–3.) On September 17, 2015, the Bankruptcy Court granted the Retention Application and authorized the Debtors to retain McKinsey as turnaround advisor.

On March 23, 2016, more than six months after McKinsey's employment had been approved, Mar-Bow filed its proof of claim against ANR, entering the bankruptcy proceeding. On May 1, 2016, Mar-Bow filed its first notice of appearance in the bankruptcy proceeding.

---

[10] The full title of the Retention Application was "Application of the Debtors, Pursuant to Sections 327(a), 328(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Bankruptcy Rule 2014-1, for an Order Authorizing Them to Retain and Employ McKinsey Recovery & Transformation Services U.S., LLC[,] as Turnaround Advisor for the Debtors, Effective as of the Petition Date." (Retention Appl. 1, App. 1.)

Section 327(a) permits the employment of "professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons," to assist in conducting bankruptcy proceedings. 11 U.S.C. § 327(a). Section 328(a) governs the "terms and conditions" of "the employment of a professional person under section 327," 11 U.S.C. § 328(a), and Rule 2014(a) states the procedures by which an application for professional employment must be filed, Fed. R. Bank. P. 2014(a). Section 1107(b) authorized the Debtors to employ McKinsey during the bankruptcy, even though they had employed McKinsey "before the commencement of the case." 11 U.S.C. § 1107(b). Finally, Local Bankruptcy Rule 2014-1 governs service of motions. E.D. Va. Loc. Bankr. R. 2014-1.

Since entering the bankruptcy proceeding, Mar-Bow has raised the issue of McKinsey's Rule 2014 disclosures to the Bankruptcy Court formally at least five times.[11] The Court does not see—and neither party identifies—any other action by Mar-Bow in the Bankruptcy Court.

On July 12, 2016, five days after a lengthy evidentiary hearing on the matter, the Bankruptcy Court entered a written order confirming the Debtors' Reorganization Plan.[12] The Reorganization Plan became effective on July 26, 2016. Additional proceedings have taken place in the Bankruptcy Court since then, and Mar-Bow has continued to object to McKinsey's Rule 2014 disclosures.

## C. McKinsey's Employment as Turnaround Advisor for the Debtors

On August 24, 2015, three weeks after filing for bankruptcy, the Debtors filed the Retention Application in the Bankruptcy Court requesting permission to employ McKinsey as a turnaround advisor for the pendency of the bankruptcy case. The Debtors sought to retain McKinsey "as their turnaround advisor . . . to assist the Debtors with the development and refinement of their strategic business plan." (Retention Appl. 2–3, App. 2–3.)

---

[11] The Court discusses Mar-Bow's objections to McKinsey's Rule 2014 disclosures in detail later in the Memorandum Opinion. Mar-Bow's five objections include two that the Court addresses in *this* Memorandum Opinion: (1) Mar-Bow's Objection to McKinsey's Third Interim Fee Application; and, (2) Mar-Bow's Objection to McKinsey's Final Fee Application. Mar-Bow also formally objected three other times, which this Court addresses in its *Mar-Bow I* Memorandum Opinion: (1) Mar-Bow's Motion to Compel Rule 2014 Compliance; (2) Mar-Bow's Motion to Clarify the Order Granting Mar-Bow's Motion to Compel; and, (3) Mar-Bow's Objection to the Reorganization Plan. Finally, Mar-Bow admits that, before filing its Motion to Compel or any other objections to McKinsey's Rule 2014 disclosures, it "brought [the] matter to the attention of the [U.S. Trustee] on March 7, 2016." (Mar-Bow Mot. Compel. 7, App. 389.)

[12] Reorganization is the ultimate goal of a chapter 11 bankruptcy proceeding, and the Reorganization Plan is the method by which chapter 11 debtors emerge from bankruptcy.

In accordance with Federal Rule of Bankruptcy Procedure 2014(a),[13] the Debtors attached to the Retention Application a copy of the "Amended and Restated Agreement" Letter, (the "Engagement Letter") which detailed the proposed terms of McKinsey's employment as turnaround advisor for the Debtors, and the proposed fee arrangement. As turnaround advisor, McKinsey's role was to help the Debtors save money and become more profitable, which would in turn increase the bankruptcy estate and result in maximum recovery for the Debtors' creditors.[14] The Debtors requested that McKinsey's employment be approved as of August 3,

---

[13] Rule 2014(a) sets forth the required contents of an application in a bankruptcy court for the employment of a bankruptcy professional. Rule 2014(a) states in full:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Relevant to the Engagement Letter, Rule 2014(a) requires that an application to employ a professional include "the professional services to be rendered, [and] any proposed arrangement for compensation." Fed. R. Bankr. P. 2014(a).

[14] As stated in the Retention Application, McKinsey's role was to

assist the Debtors with the development and refinement of their strategic business plan . . . . [and] provid[e] chapter 11 advisory services, which include contingency planning, interim management, cash flow and liquidity assessment, forecasting and management, analysis and/or development of business and strategic plans, development and implementation of creditor and/or supplier strategies and

7

2015, the date the Debtors filed for bankruptcy, because McKinsey had been working with the Debtors since June 29, 2015, before the Debtors filed for bankruptcy.

As a term of McKinsey's employment, the Debtors agreed to indemnify McKinsey for a broad array of potential liabilities arising out of McKinsey's employment as turnaround advisor. McKinsey would *not* be indemnified, however, from liabilities resulting from its own "willful misconduct or gross negligence."[15] (Engagement Letter 6, App. 24.)

The Retention Application was unopposed, and on September 17, 2015, the Bankruptcy Court granted the Retention Application, approved the terms of the Engagement Letter, and authorized the Debtors "to employ and retain [McKinsey] as turnaround advisor." (Retention O. 1–6, Supp. 86-91.) These events all occurred six months before Mar-Bow first appeared in the bankruptcy case.

### D.    McKinsey's Rule 2014 Disclosures

Federal Rule of Bankruptcy Procedure 2014(a) requires that any application for the employment of professionals

> be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest,

---

> development and implementation of operational and/or financial improvement or turnaround plans.

(Retention Appl. 3, App. 3.)

[15] Specifically, the Engagement Letter provided, *inter alia*, that the Debtors would indemnify McKinsey for all "losses, claims, penalties, damages[,] or liabilities" arising out of McKinsey's engagement, except for "any loss, claim, damage, penalty, liability, cost, fee[,] or expense which is finally judicially determined by a court of competent jurisdiction on the merits to have resulted from the willful misconduct or gross negligence of [McKinsey]." (Engagement Letter 5–6, App. 23–24.)

their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). On its own and in response to motions, McKinsey filed multiple declarations pursuant to Rule 2014. Mar-Bow objected repeatedly to these disclosures, even as they became increasingly more specific and detailed. Mar-Bow, it seems, especially objected—and continues to object—to the aspect of McKinsey's disclosures that the Bankruptcy Court reviewed only *in camera*. Mar-Bow seeks to place these disclosures on the public record. A summary of McKinsey's Rule 2014 disclosures follows.

### 1. McKinsey's First Set of Rule 2014 Disclosures

Pursuant to Rule 2014, the Debtors attached to the Retention Application the "Declaration of Kevin Carmody" (the "First Carmody Declaration"), which included a "Disclosure Regarding [McKinsey's] Disinterestedness." (First Carmody Decl. 10–18, App. 39–47.) In the Disclosure Regarding Disinterestedness, Carmody explained the process McKinsey used[16] to identify any connections it had with the Debtors, the United States Trustee and the Bankruptcy Court, and parties "identified on the interested parties list," (the "Interested

---

[16] McKinsey took the following steps to determine what connections it had with parties on the interested parties list:

> (a) emailed members of McKinsey RTS and the McKinsey RTS Team and searched its global client database to determine the existence of any client services provided by such employees within the last three years to parties in interest (the "Interested Parties") identified on the interested parties list . . . , (b) emailed members of McKinsey RTS, the McKinsey RTS Team and partners at affiliates that provide consulting services to determine the existence of client services provided by employees within the last three years to any client that focused on a direct commercial relationship or transaction with the Debtors and (c) emailed all employees of McKinsey RTS and its affiliates to request information on any relationships with the Debtors, the United States Trustee and the Bankruptcy Court, as well as equity ownership in the Debtors.

(First Carmody Decl. 11, App. 40.)

Parties"). (*Id.* at 10–18, App. 39–47.) The First Carmody Declaration also outlined McKinsey's connections with the Interested Parties.

The First Carmody Declaration disclosed McKinsey's connections by category, number of connections, and general nature of work performed for the connection, rather than identifying connections with the interested parties by name. For example, McKinsey disclosed that a member of its team "attended a proposal meeting and submitted a proposal to *a Major Competitor* that was not accepted." (*Id.* at 12, App. 41 (emphasis added).) McKinsey also reported specific connections with "one Major Unsecured Noteholder, one Lender Under A/R Facility, three Major Customers, one Revolving Facility Lender, one Other Major Supplier of Goods and Services, one Party to Material Unexpired Leases, and one Party to Joint Ventures," among numerous other categories and connections. (*Id.*) McKinsey's initial disclosure of its connection with Interested Parties by category became a source of controversy in Mar-Bow's subsequent objections to McKinsey's Rule 2014 disclosures.

The Bankruptcy Court reviewed the First Carmody Declaration before entering the Retention Order approving McKinsey's employment as turnaround advisor. On September 17, 2015, after its review, the Bankruptcy Court found that McKinsey qualified as "a 'disinterested person' as such term is defined under section 101(14) of the Bankruptcy Code."[17] (Retention O. 2, Supplemental Appendix ("Supp.") 87.)

---

[17] Section 101(14) states in full:

The term "disinterested person" means a person that—
    **(A)** is not a creditor, an equity security holder, or an insider;
    **(B)** is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

### 2.    McKinsey's Subsequent Rule 2014 Disclosures

McKinsey filed two supplemental Rule 2014 Disclosures, even before any objections had

been lodged to its initial disclosures.  On November 9, 2015, and March 25, 2016, McKinsey

filed Supplemental Declarations of Kevin Carmody (respectively, the "Second Carmody

Declaration" and the "Third Carmody Declaration").  Each declaration was "in support of" the

Retention Application, and intended to "provide certain additional information." (Second

Carmody Decl. 2, App. 67; Third Carmody Decl. 1–2, Supp. 1289–90.)  In each declaration,

Carmody swore that McKinsey "continues to monitor the list of parties on the Interested Parties

List against its own client records." (Second Carmody Decl. 3, App. 68; Third Carmody Decl. 2,

Supp. 1290.)  Carmody also disclosed additional connections—again by category, number, and

general nature of the work McKinsey completed for the connection.

### E.    The Rule 2014 Objections

As discussed earlier, and most relevant to Mar-Bow's objections to McKinsey's Rule

2014 disclosures, Federal Rule of Bankruptcy Procedure 2014(a) requires that a professional

seeking employment in a bankruptcy proceeding file "a verified statement of the person to be

employed setting forth the person's connections with the debtor, creditors, any other party in

interest, their respective attorneys and accountants, the United States trustee, or any person

employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a).  Rule 2014

contains no definition of "connections," nor does it explain further the level of detail required in

a professional's Rule 2014 disclosures.

---

(C) does not have an interest materially adverse to the interest of the estate or of
any class of creditors or equity security holders, by reason of any direct or
indirect relationship to, connection with, or interest in, the debtor, or for any
other reason.

11. U.S.C. § 101(14).

### 1. The U.S. Trustee's Rule 2014 Objection: The U.S. Trustee's Motion to Compel

The Bankruptcy Court first heard an objection to McKinsey's Rule 2014 disclosures when the United States Trustee (the "U.S. Trustee")[18] filed a motion to compel McKinsey to comply with Rule 2014[19] (the "U.S. Trustee Motion to Compel"). The U.S. Trustee filed its Motion to Compel on May 3, 2016, nine months after the bankruptcy proceeding began and two days after Mar-Bow first appeared in the proceeding.[20] In its Motion to Compel, the U.S. Trustee asserted that McKinsey's Rule 2014 disclosures failed to comply with Bankruptcy Rules. Specifically, McKinsey's "declarations disclosed only vague and amorphous connections to creditors and other major parties in interest," and "neither identified these connections by name nor provided any insight into the nature of the connections." (U.S. Trustee Mot. Compel 1–2, App. 75–76.) The U.S. Trustee asked the Bankruptcy Court to compel McKinsey to file additional disclosures, including

> a supplemental declaration stating, at a minimum, (a) the identity of the entities
> on the Interested Parties List . . . with which McKinsey RTS and any of its

---

[18] "U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings." *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003).

[19] The full title of the U.S. Trustee Motion to Compel was "Motion of the United States Trustee to Compel McKinsey Recovery & Transformation Service U.S., Turnaround Advisor for the Debtors, to Comply with the Requirements of Bankruptcy Rule 2014." (U.S. Trustee Mot. Compel. 1, App. 75.)

[20] The record indicates that the U.S. Trustee filed its Motion to Compel at least partially at Mar-Bow's urging. In Mar-Bow's later objection to McKinsey's Rule 2014 disclosures, Mar-Bow asserts that "Mar-Bow and its counsel had brought [the possible deficiency in McKinsey's Rule 2014 disclosures] to the attention of the United States Trustee Program on March 7, 2016, and expected that the United States Trustee's consequent motion to compel would result in McKinsey's full compliance with Rule 2014." (Mar-Bow Mot. Compel 7, Supp. 1509.)
As noted, Mar-Bow filed its proof of claim on March 23, 2015, and entered its first appearance in the bankruptcy proceeding on May 1, 2016. Thus, it appears that Mar-Bow contacted the U.S. Trustee regarding McKinsey's Rule 2014 disclosures even before it was involved in the underlying bankruptcy proceeding.

affiliates have a connection . . . and (b) a general description of the connection with or work performed for these entities.

(*Id.* at 2, App. 76.)

The U.S. Trustee expressed concern that McKinsey's "failure to provide complete disclosures may also cast a cloud over the Debtors' restructuring strategy." (*Id.* at 11, App. 85.) Because McKinsey had assisted the Debtors in negotiating the terms of a financing agreement and the overall restructuring strategy, the U.S. Trustee argued that the Bankruptcy Court "should order McKinsey to supplement its disclosures so that all interested parties can meaningfully consider whether the Proposed Plan Transactions may be tainted by divided loyalties." (*Id.* at 12, App. 86.) Apparently anticipating that McKinsey might cite confidentiality concerns as a reason for limiting its disclosures, the U.S. Trustee asserted that "McKinsey's private contractual agreements do not and cannot supersede the ethics and disclosure requirements of the Bankruptcy Code and Rules." (*Id.* at 13, App. 87.)

On May 19, 2016, sixteen days later, the U.S. Trustee submitted a "Stipulation Resolving Motion of the [U.S. Trustee Motion to Compel]" (the "U.S. Trustee Stipulation"). The U.S. Trustee Stipulation stated that U.S. Trustee and McKinsey had engaged in "extensive discussions" to resolve the U.S. Trustee's concerns regarding McKinsey's Rule 2014 disclosures. (U.S. Trustee Stip. 2, Supp. 1296.) After these discussions, McKinsey had agreed to file an additional declaration disclosing more information about its connections with Interested Parties.

The same day, pursuant to the U.S. Trustee Stipulation, McKinsey filed a third Supplemental Declaration of Kevin Carmody (the "Fourth Carmody Declaration"). The Fourth Carmody Declaration included more detailed information about McKinsey's connection to the Interested Parties. It also disclosed the names of various Interested Parties that McKinsey had "served" in the past two years. Carmody swore that McKinsey had only served those clients "on

matters unrelated to the Debtors and their chapter 11 cases." (Fourth Carmody Decl. 6, App. 96.)

McKinsey still omitted the names of at least three connections, which it identified as "confidential clients." (*Id.*) Before filing the Fourth Carmody Declaration, McKinsey "reviewed its confidentiality obligations to each of its clients identified as a Major Stakeholder or Major Competitor and, to the extent necessary, . . . request[ed] the consent of such client to disclose its name" in the Fourth Carmody Declaration. (*Id.* at 3, App. 93.) Clients who did not consent to the disclosure of their names were identified as "confidential clients." (*Id.* at 4, App. 94.)

The U.S. Trustee stated that it was satisfied that McKinsey's additional disclosures in the Fourth Carmody Declaration complied with Rule 2014.

### 2. Mar-Bow Remained Unsatisfied with McKinsey's Disclosures

#### a. Mar-Bow's First Rule 2014 Objection: Mar-Bow's Motion to Compel

On June 6, 2016, dissatisfied with the U.S. Trustee's proposed resolution of McKinsey's disclosures, Mar-Bow filed a 44-page Motion to Compel McKinsey to Comply with Rule 2014 (the "Mar-Bow Motion to Compel"). Mar-Bow asserted that "McKinsey's four disclosure declarations have not allowed the Court the opportunity to . . . independently assess McKinsey's qualifications to serve as a fiduciary for the Debtors." (Mar-Bow Mot. Compel 5, Supp. 1507.) Mar-Bow voiced sweeping policy arguments that McKinsey's allegedly insufficient disclosures

threatened both the bankruptcy system's ability to function[21] and the integrity of the bankruptcy proceeding itself.[22]

Mar-Bow argued that McKinsey's disclosures were insufficiently specific to allow the Bankruptcy Court to evaluate McKinsey's disinterestedness. "McKinsey's broad, generic statements cannot supersede the specific descriptions of connections that case law interpreting Rule 2014 requires and cannot trump the obligation to perform a good faith investigation and to comply with the rule's requirements." (*Id.* at 21, Supp. 1523.) Mar-Bow also contended that the process by which McKinsey conducted its search for connections was inadequate, rendering its disclosures insufficient.[23]

The Mar-Bow Motion to Compel sought an order from the Bankruptcy Court requiring McKinsey to submit significant additional disclosures and detail regarding McKinsey's connections to the interested parties in the case. Mar-Bow also asked the Bankruptcy Court to suspend payment of McKinsey's fees, and to disgorge all of McKinsey's previously paid fees "in the event that McKinsey fails to comply with the Court's order or the Court determines that McKinsey is not qualified to serve as a professional" in the case. (*Id.* at 42–43, Supp. 1544–45.)

---

[21] For example, Mar-Bow asserted that "[t]he systemic issues raised here are of grave importance to the credibility and proper functioning of the bankruptcy system. The court and all bankruptcy professionals should aspire to maintain a transparent bankruptcy system and a level field for all creditors and stakeholders." (Mar-Bow Mot. Compel 8, Supp. 1510.)

[22] Mar-Bow contended that "[s]olicitations of bankruptcy representation opportunities 'go to the integrity of the process,' and must be disclosed by all professionals under Rule 2014, even if attorney rules of professional responsibility are inapplicable." (Mar-Bow Mot. Compel 28, Supp. 1530 (quoting *In re Universal Bldg. Prods.*, 486 B.R. 650, 664 n.16 (Bankr. D. Del. 2010).)

[23] Because "McKinsey apparently cannot discover from the entire McKinsey & Company database checking system whether it was or is involved in any matter adverse to the Debtors," its "disclosures are built upon a foundation that is too deficient to carry the weight of the requirements of Rule 2014." (Mar-Bow Mot. Compel 30, 35, Supp. 1532, 1537.)

Mar-Bow further requested an order that "McKinsey, its affiliates, and its professionals, shall not be entitled to a release, indemnity[,] or exculpation of any kind or nature in this case, whether through a plan of reorganization or otherwise." (*Id.* at 44, App. 1546.)

### i. The Bankruptcy Court's Hearing on Mar-Bow's Motion to Compel

On June 28, 2016, the Bankruptcy Court held a hearing on Mar-Bow's Motion to Compel. In the hearing, the Bankruptcy Court allowed lengthy argument from both sides, actively engaging the parties as to their positions. Brushing aside some of McKinsey's procedural arguments in opposition to Mar-Bow's Motion to Compel, the Bankruptcy Court stated,

> And that's the point I was . . . trying to get across a few minutes ago about why it is so important that parties in interest bring these kinds of matters to the attention of the Court so the Court can deal with them. And just because we've got a great watering-down of Rule 2014 because nobody is, apparently, complying with the rule, doesn't mean that the rule shouldn't be enforced. It should be enforced.

(June 28, 2016 Hr'g Tr. 127, App. 1480.) The Bankruptcy Court identified "three different categories of things" that would affect its decision on the Mar-Bow Motion to Compel:

> One is these 121 actual known clients that have not been identified. Second is the investments of McKinsey Investment in other entities that [McKinsey] say[s] that if it does exist, should be disclosed . . . . And third is, . . . what were the results to the [email] survey?

(*Id.* at 134, App. 1487.)

The Bankruptcy Court solicited a statement from the U.S. Trustee, who "g[a]ve the Court pretty much a synopsis of what came about, and how [the Trustee Motion to Compel] ended up being withdrawn at the end." (*Id.* at 143, App. 1496.) Specifically, the U.S. Trustee stated that, after McKinsey filed the Fourth Carmody Declaration, "the U.S. Trustee was satisfied that McKinsey possessed no conflicts and had greatly improved the public record of its connections." (*Id.* at 145, App. 1498.) When asked whether the U.S. Trustee believed that McKinsey's

16

disclosures satisfied Rule 2014, the Trustee responded, "If it were left up to me, I think my solution to this problem would be for [McKinsey] to make the list [of their confidential clients] available and file it and ask that it be filed under seal." (*Id.* at 145–46, App. 1498–99.)

After lengthy argument in which the Bankruptcy Court heard from Mar-Bow, McKinsey, the U.S. Trustee, and ANR, the Bankruptcy Court ruled that it would require McKinsey to provide the Bankruptcy Court with additional information. The Bankruptcy Court stated that it would "require McKinsey to disclose the 121 [confidential] clients. . . . to the Court in camera." (*Id.* at 157, App. 1510.) The Bankruptcy Court "allow[ed] McKinsey to negotiate . . . with the debtor, with the committee, with the Office of the U.S. Trustee, and [Mar-Bow]" in order to have "the proper confidentiality provisions before anything is disclosed." (*Id.*) The Bankruptcy Court stated that its

> purpose here is not to destroy McKinsey's business model [of confidentiality].[24] It's certainly not to give a competitive advantage to a competitor. The Court's going to be completely respectful of all of that, but I am not going to do anything to impair the integrity of Rule 2014. . . .
> . . . McKinsey's a professional. . . . They're a fiduciary. They're employed by the fiduciary. They're held to the same standard.

---

[24] In the hearing, *Mar-Bow* discussed in great detail McKinsey's confidentiality practices:

> [McKinsey] holds out that it maintains a strict policy of confidentiality regarding its clients. Its Web site proclaims, "We guard client confidences." And then again, "We don't publicize our work for our clients."
> . . . .
> The code of ethics [McKinsey's founder] promoted included this commitment to confidentiality, and as a result, McKinsey never talks about its clients. Its clients can talk about McKinsey, and some of them have[,] but McKinsey never talks about its clients.

(June 28, 2016 Hr'g Tr. 93–94, App. 1446–47.)

(*Id.* at 158, App. 1511.) The Bankruptcy Court also ordered that McKinsey provide it with information that "the [Bankruptcy] Court needs to have . . . in order to make the disclosures that have been provided in this case meaningful." (*Id.*)

### ii. The Bankruptcy Court's Order Compelling Compliance[25]

On July 1, 2016, three days after argument on Mar-Bow's Motion to Compel, the Bankruptcy Court entered an order granting Mar-Bow's Motion to Compel in certain respects, as stated at the June 28, 2016 Hearing (the "Order Compelling Compliance"). Specifically, the Bankruptcy Court ordered McKinsey to deliver to the Bankruptcy Court, for *in camera* review:

(1) "A list containing the names of the 121 undisclosed connections discussed at the hearing, together with sufficient information for the Court to determine (1) whether any of those connections constitute an interest that is adverse to the estate and (2) whether McKinsey is disinterested, all as required by 11 U.S.C. § 327";

(2) "Identification of Interested Parties that manage investments for MIO Partners, Inc.," a McKinsey affiliate;

(3) "Identification of Interested Parties in which MIO owns securities," subject to several limitations"; and,

(4) "The survey response rates to the email surveys" sent by McKinsey to determine the presence of connections, "together with sufficient information for the Court to determine (1) whether any of those connections constitute an interest that is adverse to the estate and (2) whether McKinsey is disinterested, all as required by 11 U.S.C. § 327."

(O. Compelling Compliance 2–3, App. 898–99.)

### b. Mar-Bow's Second Rule 2014 Objection: Mar-Bow's Motion to "Clarify"

On July 5, 2016, four days later, Mar-Bow filed a "Motion to Clarify" the Bankruptcy Court's July 1, 2016 Order. Mar-Bow contended that, although the Order Compelling

---

[25] Mar-Bow appealed the Order Compelling Compliance. The Court addresses that appeal in the *Mar-Bow I* Memorandum Opinion.

Compliance provided for *in camera* review of McKinsey's additional disclosures and allowed the U.S. Trustee and professionals employed by the Debtors to review the additional information, the Order Compelling Compliance "does not appear to allow Mar-Bow's professionals to review" the information. (Mot. Clarify 1–2, Supp. 1598–99.) Although Mar-Bow expressly stated that its Motion to Clarify was "not a motion for reconsideration," (*id.* at 1, App. 1598), Mar-Bow devoted more than a full page to argument about why Mar-Bow should be allowed to review the additional information because Mar-Bow was the party "that first shed light on McKinsey's failure to comply with Rule 2014," and the party who "has demonstrated the greatest commitment to assist the Court in fulfilling its obligation to maintain the integrity of its processes through strict enforcement of . . . Rule 2014," (*id.* at 2–3, App. Supp. 1599–1600).

### i. The Bankruptcy Court's Rulings on Mar-Bow's Motion to "Clarify"

On July 7, 2016, the Bankruptcy Court heard argument on Mar-Bow's Motion to Clarify. Mar-Bow reasserted its position that it should participate in the process of reviewing McKinsey's Rule 2014 disclosures, evaluating the sufficiency of those disclosures, and determining whether McKinsey qualified as a disinterested person. As discussed in the *Mar-Bow I* Memorandum Opinion, the Bankruptcy Court—remarkably, given the timing of Mar-Bow's Motion to Clarify—had already reviewed the additional information it ordered McKinsey to disclose when the July 7, 2016 Hearing began. The Bankruptcy Court stated, based on its review of the *in camera* production, that it was completely satisfied with McKinsey's disinterestedness, and that McKinsey's *in camera* disclosures had been entirely sufficient.

On July 15, 2016, the Bankruptcy Court entered an Order addressing Mar-Bow's Motion to Clarify (the "Clarification Order").[26] The Bankruptcy Court ordered that twenty-one days after the parties had reviewed the accompanying Confidentiality Order, the U.S. Trustee could file "a recommendation with the Court whether any further public disclosures should be made." (Clarification O. 2, App. 904.) After the U.S. Trustee filed its recommendation, the Bankruptcy Court would determine whether McKinsey would be required to file "further public disclosures." (*Id.*) The Bankruptcy Court denied any further requests in Mar-Bow's Motion to Clarify. (*Id.*)

Also on July 15, 2016, the Bankruptcy Court entered a "Confidentiality Order Pursuant to Order Dated July 1, 2016" (the "Confidentiality Order").[27] The Confidentiality Order governed the "information submitted to the [Bankruptcy] Court for in *camera review* [sic] pursuant to the July 1 Order, relating to the disclosure of [McKinsey's] connections under Bankruptcy Rule 2014 and any further information McKinsey . . . provides to satisfy such requirements." (Confidentiality O. 2, Supp. 1819.) The Confidentiality Order provided that McKinsey could designate a document as confidential by placing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document, which would constitute a "certification by McKinsey . . . that the information is treated as confidential by McKinsey . . . and its affiliates." (*Id.* at 2–3, Supp. 1819–20.) The Confidentiality Order also designated categories of persons allowed to review confidential information, and expressly excluded people who are "employees, directors,

---

[26] Mar-Bow appealed the Clarification Order. The Court addresses that appeal in the *Mar-Bow I* Memorandum Opinion.

[27] Mar-Bow appealed the Confidentiality Order. The Court addresses that appeal in the *Mar-Bow I* Memorandum Opinion.

or officers of a competitor of McKinsey RTS and its affiliates" or people who are "a direct competitor of McKinsey RTS or its affiliates."[28] (*Id.* at 4, Supp. 1821.)

### ii. The U.S. Trustee Recommended that McKinsey Publicly File Additional Rule 2014 Disclosures

On August 5, 2016, the U.S. Trustee filed a "Statement of the Recommendation of the United States Trustee on Public Disclosures by McKinsey RTS" (the "U.S. Trustee Recommendation"). The U.S. Trustee acknowledged that the Bankruptcy Court had already found that McKinsey was a disinterested person, and "the sole issue for adjudication now is what further public disclosures McKinsey . . . should make." (U.S. Trustee Rec. 3, Supp. 2049.) The U.S. Trustee recommended that McKinsey make additional public disclosures "[b]ecause Rule 2014 does not define connections, and because transparency is critical to the integrity of the bankruptcy process." (*Id.*) The U.S. Trustee recommended that McKinsey make the following additional disclosures:

1) "Every name on the list of interested parties provided by the Debtors ("interested parties' list") with whom either McKinsey RTS or personnel borrowed from an affiliate thereof, has a connection and a statement whether any services provided were related to or adverse to the Debtors . . . for a period of three years before the petition date";

2) "Every name on the interested parties' list who was a client of any McKinsey RTS affiliate with respect to 'a direct commercial relationship or transaction' with the Debtors . . . for a period of three years before the petition date";

3) "Every name on the interested parties' list that previously employed McKinsey RTS personnel . . . for a period of three years before the petition date"; and,

4) "Every name of a professional on the interested parties' list that represents or represented McKinsey RTS or its affiliates . . . for a period of three years before the petition date."

---

[28] This exclusion meant that no employee, director, or officer of Mar-Bow could view the confidential information.

(*Id.* at 3–4, Supp. 2049–50.)  The U.S. Trustee asserted that "[t]he disclosures made to date, with the additional disclosures recommended here, will satisfy Rule 2014."  (*Id.* at 4, Supp. 2050.)

### iii.  McKinsey Publicly Filed Additional Rule 2014 Disclosures

The same day, McKinsey filed the "Declaration of Kevin Carmody in Respect of Recommendation of [U.S.] Trustee" (the "Fifth Carmody Declaration").  The Fifth Carmody Declaration "provide[d] th[e] disclosure" that the U.S. Trustee recommended.  (Fifth Carmody Decl. 2, App. 969.)

### F.  Mar-Bow's Third Rule 2014 Objection:  Mar-Bow's Reorganization Plan Objection

While Mar-Bow and McKinsey were litigating the sufficiency of McKinsey's Rule 2014 disclosures, the rest of the bankruptcy proceedings continued to move forward.  On May 25, 2016, the Debtors filed the "Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession" (the "Reorganization Plan" or "Plan"), which set forth the proposed reorganization terms.  On June 29, 2016, Mar-Bow filed an objection to the Reorganization Plan, contending that that provisions of the Plan that released, excused, and indemnified various professionals from liability for actions taken in connection with the restructuring should not apply to McKinsey because McKinsey had not fully complied with Rule 2014.

### 1.  The Bankruptcy Court Heard Mar-Bow's Reorganization Plan Objection

On July 7, 2016, after hearing argument on Mar-Bow's Motion to Clarify, the Bankruptcy Court conducted a four-and-a-half-hour long evidentiary hearing (the "Plan Confirmation Hearing").  At the Plan Confirmation Hearing, the Bankruptcy Court heard testimony and received declarations offered as exhibits.  It also heard argument on Mar-Bow's Reorganization Plan Objection.

Mar-Bow asserted that its objection was "in the nature of a limited objection. And it's based on the fact the disclosure has not been made—sufficient disclosure has not been made." (July 7, 2016 Hr'g Tr. 113, Supp. 2227.) Mar-Bow suggested that "the way [its] limited objection could be satisfied would be to carve McKinsey's exculpation and release out of the [P]lan pending the resolution of the [Rule 2014] dispute." (*Id.* at 114, Supp. 2228.)

Expressing confusion about the link between Mar-Bow's objection and the remedy it sought, the Bankruptcy Court asked, "[W]hy would [additional Rule 2014 disclosures from McKinsey] make any difference with regard to the exculpation provisions in the [P]lan?" (*Id.* at 115, Supp. 2229.) Mar-Bow responded that it did not "believe that an adequate disclosure has been made," and that it was its "belief that McKinsey has connections with or represents, if not all, virtually all of the lenders in this case." (*Id.* at 116, Supp. 2230.) Mar-Bow seemed to argue, essentially, that McKinsey could not "demonstrate that it has undivided loyalty to the debtor, and therefore, [Mar-Bow] believe[s] that they're not disinterested, and therefore, they should not have the benefit of an exculpation or a release in this case." (*Id.*)

Trying again to discern the basis for Mar-Bow's objection to the release and exculpation provisions, the Bankruptcy Court stated

> [M]aybe I'm confused about what you're actually objecting to as far as exoneration is concerned. . . .
>
> Because [the exoneration provision] just sets the standard of proof, does it not. . . . [I]t's just negligence and such that receives the benefit of exoneration and it has to be brought before this Court . . . .
>
> . . . [W]e have an affirmative statement from McKinsey that says we are disinterested . . . . And if they're intentionally shown that that's not the case, then why would anything—exoneration make any difference as far as [Mar-Bow]?

(*Id.* at 117–18, Supp. 2231–32.) Mar-Bow responded, "I don't necessarily agree with the proposition, Your Honor. I believe that exoneration and release will effectively preclude our ability to get to the bottom of this matter." (*Id.* at 118, Supp. 2230.)

In argument, McKinsey expressed the same confusion the Bankruptcy Court had: "I think a party standing up and saying I don't know certain names does not connect the dots as to why that has anything to do with the exculpation and releases in the plan." (*Id.*) Counsel for the Debtors conveyed similar bewilderment:

> We have, as far as I know, an order on the docket finding disinterestedness. So we would suggest that to the extent there is some issue that needs to be addressed by the Court in due course, it can be done, but it should not affect [the Plan] confirmation.
> . . . [I]f there was some effort to defraud the Court and not disclose something, that would not be, by its terms, covered by our releases and exculpation. And it sounds like that's the concern and I don't think that's something we're asking the Court to give people a free pass on.

(*Id.* at 120–21, Supp. 2234–35.)

The Bankruptcy Court overruled Mar-Bow's objection, stating, "I think I've dealt with that. . . . And I'm absolutely satisfied, as I said before, McKinsey is [a] disinterested party based on everything that I've seen, which was far more than adequate submission that I received yesterday." (*Id.* at 121–22, Supp. 2235–36.)

### 2. The Bankruptcy Court's Factual Findings Regarding the Reorganization Plan

During the Plan Confirmation Hearing, the Bankruptcy Court made numerous factual findings about the Reorganization Plan, the release and exculpation provisions, and the role the professionals played in developing the Plan and making it successful.[29] Specifically, the Bankruptcy Court found:

---

[29] Mar-Bow challenged none of these findings at the hearing, and it challenges none of these findings in this appeal or in its *Mar-Bow I* appeal.

- "[T]he contributions of the released parties are significant in this case. In fact, this reorganization would not occur but for those [contributions]." (*Id.* at 176, Supp. 2290)

- The release and exculpation provisions were appropriate, in part because of "the significant contribution of assets, the fact that it was essential to the reorganization, that there was overwhelming acceptance of the plan, and that there wouldn't be a distribution to any of these parties without it, and in fact, no parties that are participating in any of this are getting—are objecting to the release." (*Id.*)

- "And so I think also very, very importantly in this case, . . . the releases . . . . are part of a plan. It was put into the plan, and all the creditors got to vote on this. And I think that that is extremely important, that it was baked into the plan, part of the plan, and everybody got a chance to be a part of that. . . . [That's] something that I consider very, very highly in approving these releases." (*Id.*)

- The Plan "has a substantial consensus of the various constituencies, [and] significant support of all of the creditors and other parties-in-interest." (*Id.* at 191, Supp. 2305)

- "[A]ll of the professionals involved in the case [contributed to] . . . . a very, very successful resolution to [the Plan]." (*Id.* at 192, Supp. 2306)

### 3. The Bankruptcy Court's Order Confirming the Reorganization Plan[30]

On July 12, 2016, the Bankruptcy Court entered a written order confirming the

Reorganization Plan and overruling objections to it. The Bankruptcy Court found that the Plan's

basic transaction would not occur without the release and exculpation provisions:

> NewCo will not enter into the Stalking Horse APA and consummate the transactions contemplated thereby, thus adversely affecting the Debtors' Estates and undermining the ability of the Debtors to consummate the Plan, if: . . . the injunction, exculpation and release provisions in the Plan were not approved by the Bankruptcy Court.

(Reorganization Plan ¶ WW, Supp. 1628.) The Bankruptcy Court also found that "the provisions

of the Plan constitute a good faith compromise and settlement of all Claims and controversies

resolved pursuant to the Plan." (*Id.* ¶ GGG, Supp. 1632.) The Reorganization Plan became

---

[30] Mar-Bow appealed narrow provisions of the Order Confirming the Reorganization Plan. The Court addresses that appeal in the *Mar-Bow I* Memorandum Opinion.

effective on July 26, 2016, and it was "deemed to be substantially consummated" on that day.[31]

(*Id.* at 84, Supp. 1689.)

### G.   Mar-Bow's Fee Application Objections

Mar-Bow also challenged the sufficiency of McKinsey's Rule 2014 disclosures each time McKinsey filed an application for fees in the Bankruptcy Court.  The Court discusses those challenges below.

### 1.   McKinsey's Third Interim Fee Application

On June 14, 2016, McKinsey filed its Third Fee Application for services rendered from February 1, 2016, through April 30, 2016 (the "Third Fee Application").

### a.   Mar-Bow's Fourth Rule 2014 Objection:  Mar-Bow's Third Fee Application Objection[32]

On July 1, 2016, Mar-Bow objected to McKinsey's Third Fee Application, again raising the issue of McKinsey's alleged Rule 2014 noncompliance (the "Third Fee Application Objection").  Mar-Bow contended that, "[w]ithout full and complete disclosure as required by Rule 2014, Mar-Bow is unable to determine whether the tasks performed or the fees sought are solely for the purpose of representing the Debtors and are in the best interests of the Estates." (Mar-Bow Third Fee Appl. Obj. 3, App. 886.)  Mar-Bow further stated that it was objecting to the Third Fee Application

---

[31] After noting its appeal of the Order Confirming the Reorganization Plan, Mar-Bow sought and was denied a stay of implementation of the Plan pending the outcome of its appeal. That appeal is addressed in the *Mar-Bow I* Memorandum Opinion.  Mar-Bow's Motion to Stay and the Bankruptcy Court's ruling on that motion have no bearing on the issues in this appeal, so the Court omits discussion of Mar-Bow's Motion to Stay from this Memorandum Opinion.

[32] McKinsey's Third Interim Fee Application marked Mar-Bow's first objection to McKinsey's fee applications.  Given that the Third Fee Application covered services rendered beginning on February 1, 2016, and Mar-Bow did not enter the bankruptcy case until March 23, 2016, almost two months later, the record implies that the Third Fee Application was Mar-Bow's first opportunity to challenge McKinsey's fees directly.

so as to preserve its ability to supplement this Objection (if necessary) when it obtains complete disclosure as required by Rule 2014, to preserve its ability to object to any additional Interim or Final Fee Applications, and to reiterate and preserve its objection to any release and exculpation provisions of the Plan that apply to McKinsey RTS.

(*Id.* at 5, App. 888.)

### b. McKinsey Moved to Dismiss Mar-Bow's Objection to the Third Fee Application

On August 1, 2016, McKinsey moved to dismiss Mar-Bow's objection to the Third Fee Application (the "Motion to Dismiss Third Fee Application Objection"). McKinsey argued that Mar-Bow's objection should be dismissed for at least four reasons.

First, McKinsey contended that the issue of McKinsey's disinterestedness and entitlement to fees had been "[r]aised and [d]ecided" when the Bankruptcy Court ruled on Mar-Bow's Motion to Compel. (Mot. Dismiss Third Fee Appl. Obj. 2, App. 944.) Second, McKinsey asserted that the Confirmation Order and the Bankruptcy Court's findings therein "bar and estop Mar-Bow from claiming . . . that it may have received less than its fair entitlements" in the Reorganization Plan for any reason, including any alleged inadequacy of McKinsey's Rule 2014 disclosures. (*Id.* at 3, App. 945.) Third, McKinsey maintained that Mar-Bow lacked standing to object to the Third Fee Application because Mar-Bow's recovery was fixed in the Reorganization Plan, meaning that Mar-Bow had no pecuniary interest in the outcome of its objection. (*Id.*) Finally, McKinsey insisted that Mar-Bow's earlier appeals of the Bankruptcy Court's Rule 2014 Rulings prevented the Bankruptcy Court from ruling, in the context of the Third Fee Application, that McKinsey's Rule 2014 disclosures were inadequate. McKinsey contended that Mar-Bow's appeals divested the Bankruptcy Court of the "power to change or render moot" its earlier determinations regarding McKinsey's compliance with Rule 2014. (*Id.* at 3–4, App. 945–46.)

On September 8, 2016, the Bankruptcy Court held a hearing on McKinsey's Third Fee

Application, and addressed Mar-Bow's Objection and McKinsey's Motion to Dismiss.  Mar-

Bow argued at length about McKinsey's Rule 2014 disclosure failings.  Mar-Bow ultimately

clarified that it sought "no relief other than sanctions against McKinsey." (Sept. 8, 2016 Hr'g

Tr. 27, App. 1574.)  Mar-Bow contended that "sanctions are justified here.  They are not only

justified, they are compelled." (*Id.* at 27, App. 1574.)  Mar-Bow asserted that, as a sanction,

"[a]t a minimum, . . . this third fee application should be denied." (*Id.* at 29, App. 1576.)

After patiently hearing Mar-Bow's challenge of McKinsey's Rule 2014 disclosures—

now for at least the fourth time—the Bankruptcy Court granted McKinsey's Third Fee

Application.  The Bankruptcy Court found that "the work that [McKinsey] performed in this case

was vital to the reorganization, and . . . the fees that were charged are reasonable." (*Id.* at 42,

App. 1589.)  The Bankruptcy Court reiterated its previous finding that McKinsey was

disinterested, stating that "[a]ll of the connections that have been disclosed . . . do not show a

lack of disinterestedness." (*Id.* at 43, App. 1590.)  For those reasons, the Bankruptcy Court

"approve[d] the interim fee application," and "for exactly the same reasons, . . . grant[ed] the

motion to dismiss."[33] (*Id.* at 44, App. 1591.)

On September 23, 2016, the Bankruptcy Court entered an order granting McKinsey's

Third Fee Application, overruling Mar-Bow's objection to the Third Fee Application, and

granting McKinsey's Motion to Dismiss Third Fee Application Objection "in accordance with

---

[33] The Bankruptcy Court then clarified that "since I've granted the fees, that it really
renders [the Motion to Dismiss] moot to a certain extent." (Sept. 8, 2016 Tr. 45, App. 1592.)

the Court's ruling on the record at the Hearing" (the "Third Fee Application Order").[34] (Third

Fee Appl. O. 3–4, App. 1300–01.) Mar-Bow appealed the Third Fee Application Order that day.

### 2. McKinsey's Final Fee Application

On September 26, 2016, McKinsey filed its fourth and Final Fee Application for services

rendered from May 1, 2016, through July 26, 2016 (the "Final Fee Application").

#### a. Mar-Bow's Fifth Rule 2014 Objection: Mar-Bow's Final Fee Application Objection

On October 26, 2016, Mar-Bow objected to McKinsey's Final Fee Application, raising

the same arguments it previously had put forth regarding McKinsey's Rule 2014 disclosures.

McKinsey moved to dismiss Mar-Bow's objection, advancing the same defenses it previously

had asserted, and further contending that Mar-Bow failed to establish that it was entitled to

reconsideration of the Bankruptcy Court's previous decisions regarding McKinsey's Rule 2014

disclosures.

#### b. The Bankruptcy Court Heard and Ruled on Mar-Bow's Final Fee Application Objection

On December 7, 2016, the Bankruptcy Court held a hearing on McKinsey's Final Fee

Application. The parties' arguments addressing Mar-Bow's Final Fee Application Objection

focused on whether Mar-Bow had constitutional standing to object to McKinsey's Final Fee

Application. McKinsey contended that because the Reorganization Plan fixed Mar-Bow's

recovery amount, Mar-Bow had no pecuniary interest in McKinsey's fees being disgorged.

McKinsey also asserted that the Bankruptcy Court lacked jurisdiction to hear Mar-Bow's Final

Fee Application Objection because the Rule 2014 issue raised in Mar-Bow's objection already

was before this Court on appeal. According to McKinsey, "[t]he appellate jurisdiction principle

---

[34] Mar-Bow appeals the Third Fee Application Order, which the Court addresses in this Memorandum Opinion.

is that this [Bankruptcy] Court can't do something that changes the record on appeal to the district court to perhaps moot it." (Dec. 7, 2016 Hr'g Tr. 16–17, App. 2001–02.) Mar-Bow, in turn, argued broadly that "the law is applicable to McKinsey's fee application, whether any particular party has standing or not," and that "the [Bankruptcy] Court's independent obligation to review fees is not diminished in any sense." (*Id.* at 6, App. 1991.)

The Court granted McKinsey's Motion to Dismiss from the bench, concluding that Mar-Bow lacked constitutional standing, and that the Rule 2014 disclosures were before this Court. (*Id.* at 20, App. 2005.) The Bankruptcy Court commented that it was "not going to do anything to interfere with the district court's ability to be able to resolve the issues it has before it on appeal." (*Id.*)

On December 20, 2016, the Bankruptcy Court entered an order granting McKinsey's Final Fee Application and dismissing Mar-Bow's objection to the Final Fee Application (the "Final Fee Application Order"),[35] an order granting McKinsey's Motion to Dismiss Mar-Bow's Final Fee Application objection (the "Motion to Dismiss Order"),[36] and a memorandum opinion explaining its reasons for dismissing Mar-Bow's objections (the "Motion to Dismiss Memorandum Opinion").[37] In the Final Fee Application Memorandum Opinion, the Bankruptcy Court held that Mar-Bow lacked constitutional standing "to raise the Objection [to the Final Fee Application], as Mar-Bow no longer has a pecuniary interest in the outcome of the Final Fee Application." (Mot. Dismiss Mem. Op. 5, App. 1938.) The Bankruptcy Court reasoned that

---

[35] Mar-Bow appeals the Final Fee Application Order, which the Court addresses in this Memorandum Opinion.

[36] Mar-Bow appeals the Motion to Dismiss Order, which the Court addresses in this Memorandum Opinion.

[37] Mar-Bow appeals the Motion to Dismiss Memorandum Opinion, which the Court addresses in this Memorandum Opinion.

because Mar-Bow's expected recovery became fixed at the time the Reorganization Plan was confirmed, Mar-Bow would reap no financial benefit from a denial of McKinsey fees, meaning that Mar-Bow therefore lacked standing to object to its Final Fee Application. (*Id.* at 7, App. 1940.) The Bankruptcy Court also ruled that it lacked subject-matter jurisdiction to address Mar-Bow's Rule 2014 arguments because the Bankruptcy Court's "findings that McKinsey . . . complied with Bankruptcy Rule 2014 and . . . is a 'disinterested person' are both currently pending review by the District Court." (*Id.* at 7–8, App. 1940–41.)

On December 29, 2016, Mar-Bow amended its appeal in this case to include an appeal of the Final Fee Application Order, the Motion to Dismiss Order, and the Motion to Dismiss Memorandum Opinion.[38]

### III. Procedural History

Before the Court are Mar-Bow's appeals of four Bankruptcy Court rulings:

(1)     Third Fee Application Order;

(2)     Final Fee Application Order;

(3)     Motion to Dismiss Order; and,

(4)     Motion to Dismiss Memorandum Opinion.

Mar-Bow and McKinsey both filed their Opening Briefs (ECF Nos. 45, 49), and Mar-Bow filed its reply brief, (ECF No. 51). McKinsey moved to dismiss Mar-Bow's appeals for lack of

---

[38] Mar-Bow also noticed an appeal, in *Mar-Bow I*, of the Final Fee Application Order, the Motion to Dismiss Order, and the Motion to Dismiss Memorandum Opinion. The Court cannot discern why Mar-Bow attempts to appeal the same three rulings in two different cases. Mar-Bow not only fails to acknowledge its duplicative appeals in the filings before this Court, but also directs the Court to no authority—substantive or procedural—entitling it to appeal the same orders two separate times in two different cases. Because Mar-Bow's appeals of rulings regarding McKinsey's Final Fee Application relate to Mar-Bow's appeal of rulings regarding McKinsey's Third Fee Application, the Court addresses the appeals of those four rulings in this Memorandum Opinion.

standing. (ECF No. 36.) Mar-Bow responded, (ECF No. 42), and McKinsey replied, (ECF No. 48).

For the reasons that follow, the Court will grant McKinsey's Motion to Dismiss. The Court will dismiss Mar-Bow's appeal for lack of standing.

## IV. Analysis: Mar-Bow's Appeal of the Fee Application Rulings[39]

Mar-Bow appeals four rulings of the Bankruptcy Court, all of which relate to Mar-Bow's objections to McKinsey's Fee Applications. Mar-Bow objected to McKinsey's Third Fee Application and McKinsey's Final Fee Application on the grounds that McKinsey had failed to comply with Rule 2014. Mar-Bow suggests that McKinsey's noncompliance with Rule 2014 renders McKinsey ineligible to receive fees and also subjects McKinsey to additional monetary sanctions. Because Mar-Bow lacks standing to appeal the Fee Application Rulings, the Court will not reach the merits of Mar-Bow's arguments.

### A.    The Scope of Mar-Bow's Fee Application Rulings Appeals

Mar-Bow presents three issues to the Court: (1) whether the Bankruptcy Court erred in dismissing Mar-Bow's Fee Application Objections for lack of standing; (2) whether the Bankruptcy Court erred "in relying on its finding of disinterestedness in declining to sanction McKinsey"; and, (3) whether the Bankruptcy Court abused its discretion in declining to sanction McKinsey.[40] (Mar-Bow Br. 1–2, ECF No. 45.) Mar-Bow asks this Court to "order that Mar-

---

[39] For readability, the Court will refer to the Bankruptcy Court's rulings at issue in this appeal collectively as "the Fee Application Rulings."

[40] Mar-Bow argues—as it does throughout all its filings in this Court—that the twenty-five pages of "connections" McKinsey identified in its four different publicly filed Rule 2014 disclosures remain insufficient, even though McKinsey's disclosures satisfied both the U.S. Trustee and the responsive and thorough Bankruptcy Court. Thus, according to Mar-Bow, McKinsey should receive no fees for its professional services. Because the Court grants McKinsey's Motion to Dismiss and dismisses Mar-Bow's appeal for lack of standing, the Court will not evaluate the merits of what amounts to a derivative attack on McKinsey's Rule 2014

Bow may object and be heard on McKinsey's requests for fees, and [] reverse the bankruptcy court's approval of McKinsey's fee applications for failure to comply with Rule 2014." (*Id.* at 47, ECF No. 45.) McKinsey counters that its Rule 2014 disclosures in the bankruptcy proceeding were adequate, that the Bankruptcy Court did in fact hear Mar-Bow on McKinsey's fee requests, and that the Bankruptcy Court correctly determined that Mar-Bow lacked standing to object to McKinsey's fee applications.

McKinsey also has moved to dismiss Mar-Bow's appeal for lack of standing. McKinsey argues that "[n]ow that the Plan has been confirmed and has become effective, Mar-Bow has no financial stake in the outcome of the Interim Fee Objection or any of the Fee Orders" meaning that Mar-Bow lacks the requisite pecuniary interest in the outcome of the appeal. (Mot. Dismiss 10–11, ECF No. 36.) According to McKinsey, because the United States Court of Appeals for the Fourth Circuit has held that a bankruptcy "appellant is required to have a pecuniary interest in the outcome of the appeal to have standing as a person aggrieved," Mar-Bow's appeal of the Fee Application Rulings must be dismissed. (*Id.* at 11, ECF No. 36.)

Mar-Bow implicitly acknowledges that it lacks a pecuniary interest in the outcome of the appeal, but asserts that

> [w]hether a party must satisfy a "pecuniary interest" test for bankruptcy appellate standing is a separate question from whether a party has constitutional standing to maintain an action. The "pecuniary interest" test is more stringent than the broader test for Article III standing under the Constitution, which does not require a showing of financial harm.

(Resp. Mot. Dismiss 7, ECF No. 42.) Mar-Bow avers that it possesses Article III standing to appeal the Fee Application Rulings, based on an alleged injury in fact that stems from its deprivation of "access to judicial records," namely, the Rule 2014 disclosures that Mar-Bow

---

disclosures under the guise of a challenge to fees. The Court speaks to additional challenges to McKinsey's Rule 2014 disclosures in its *Mar-Bow I* Memorandum Opinion.

asserts McKinsey should have filed. (*Id.* at 8.) Mar-Bow's Article III standing argument unfolds as follows:

> Because Mar-Bow has a colorable claim to access McKinsey's connections under Rule 2014, it has established an injury in fact for purposes of Article III. Having done so, Mar-Bow easily satisfies the other two elements of Article III standing. Its injury in fact is traceable to McKinsey's filing its disclosures *in camera* or failing to disclose its connections altogether. That injury would be redressed by a court order granting Mar-Bow the relief it seeks, namely, access to the in camera disclosures and to as-yet-undisclosed connections.

(*Id.* at 13, ECF No. 42 (internal quotation marks, citations, and quotation alterations omitted).)

### B. The Court Will Dismiss Mar-Bow's Appeal for Lack of Standing Because Mar-Bow Lacks a Pecuniary Interest in the Outcome of the Appeal

#### 1. Mar-Bow Has No Pecuniary Interest in the Outcome of the Appeal

"The test for standing to appeal a bankruptcy court's order to the district court is well-established: the appellant must be a *person aggrieved* by the bankruptcy order." *In re Urban Broad. Corp.*, 401 F.3d 236, 243 (4th Cir. 2005) (citing *In re Clark*, 927 F.2d 793, 795 (4th Cir. 1991). The "person aggrieved" test was originally codified in the original Bankruptcy Code, but abandoned when Congress repealed it in 1978. *In re Clark*, 927 F.2d at 795. Courts, however, continue to use the test. *Id.* "[I]t is well-established that a person aggrieved is a party directly and adversely affected pecuniarily."[41] *In re Urban Broad.*, 401 F.3d at 244 (quotations and citations omitted). In other words, in order to have standing to appeal a bankruptcy court order, the appellant "must show that the order . . . diminishes [its] property, increases [its]

---

[41] "United States trustees, who never have pecuniary interests in cases, could not of course meet this standard, but there are other standards applicable to parties such as . . . trustees." *In re Clark*, 927 F.2d at 795; *see also In re Revco D.S., Inc.*, 898 F.2d 498, 499–500 (6th Cir. 1990) (holding that the U.S. Trustee, despite having no pecuniary interest in the outcome of bankruptcy court rulings, has standing to appeal because of the Trustee's unique role as "a watchdog rather than an advocate" who is "responsible for protecting the public interest and ensuring that bankruptcy cases are conducted according to law") (internal quotation marks omitted). Normally, of course, an individual lacks standing when seeking "not remediation of its own injury[,] . . . but vindication of the rule of law—the 'undifferentiated public interest.'" *Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 106 (1998).

burdens[,] or impairs [its] rights." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 558 (D. Del. 2005). The application of the "person aggrieved" standard to establish standing in a bankruptcy appeal "reflect[s] the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988).

Mar-Bow lacks standing to appeal the Bankruptcy Court's Fee Application rulings because Mar-Bow has no pecuniary interest in the outcome of those appeals. Mar-Bow lost any pecuniary interest in the approval of McKinsey's Fee Applications on July 12, 2016, when the Bankruptcy Court confirmed the Reorganization Plan. When the Plan was finalized, the expected recovery for Mar-Bow's class of claim became fixed.[42] All additional cash will be distributed to holders of "Allowed Secured First Lien Lender Claims," which does not include Mar-Bow. Therefore, even if the Court were to grant Mar-Bow's requested relief by remanding the case to the Bankruptcy Court with all of Mar-Bow's proposed mandates, and even if the Bankruptcy Court then sanctioned McKinsey by disgorging *all* of its fees, those fees would return as cash to the Estate and be distributed to holders of "Allowed Secured First Lien Lender Claims." Mar-Bow would receive no pecuniary benefit at all. Mar-Bow thus lacks any pecuniary interest in the outcome of this appeal, it is not a "person aggrieved" by the Bankruptcy Court's order, and it lacks standing to appeal those rulings.

Mar-Bow argues that "[w]hether a party must satisfy a 'pecuniary interest' test for bankruptcy appellate standing is a separate question from whether a party has constitutional

---

[42] Mar-Bow's unsecured claim represents $1.25 million of ANR 7.5% second lien notes due August 1, 2020. Mar-Bow, a Class 6B claimant under the Plan, shares in the "Category 2 General Unsecured Claims Asset Pool," the amount of which was fixed at the time the Plan became final. Mar-Bow's recovery from the Estate will not change.

standing to maintain an action." (Resp. Mot. Dismiss 8, ECF No. 42.) According to Mar-Bow, "[t]he 'pecuniary interest' test is more stringent than the broader test for Article III standing under the Constitution," because a party can have an Article III injury-in-fact without being financially harmed. (*Id.*) Mar-Bow urges this Court to decline to hold Mar-Bow to the standard usually applied to determine whether a party has standing to appeal a bankruptcy court decision. Mar-Bow, however, cites no persuasive authority for this Court to do so, and this Court sees no reason to shun the "person aggrieved standard," designed in part to assure that bankruptcy litigation does not become "mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Johns-Manville Corp.*, 843 F.2d at 642.[43]

> **2.** **Mar-Bow Likely Lacks Article III Standing Because Any Alleged Injury-in-Fact Likely Cannot Be Redressed by the Relief Mar-Bow Seeks in This Appeal**

Even if the Court were inclined to apply the Article III[44] standard for standing—rather than the customary "person aggrieved" standard consistently applied in bankruptcy appeals—the

---

[43] Furthermore, the unique nature of bankruptcy litigation justifies the application of specialized legal doctrines. The Fourth Circuit has recognized this when comparing the pragmatic bankruptcy doctrine of equitable mootness with the concept of constitutional mootness, which raises issues of justiciability and jurisdiction. *See Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). In part because parties in bankruptcy actions might "tak[e] advantage of bankruptcy procedures to place barriers in the way of . . . competitor[s]," *Mac Panel*, 283 F.3d at 627, doctrines such as the "person aggrieved" standard have special importance in bankruptcy proceedings. *See, e.g., id.* at 627 n* (noting the countervailing interests in place when a debtor's creditor is also a major competitor: "The longer MAC Panel remains in bankruptcy, the longer MAC Panel must compete against a competitor who not only is in a position to utilize MAC Panel's presence in Chapter 11 to gain competitive advantage but, in its dual status as a creditor, also is in a position to oppose and prolong MAC Panel's efforts to emerge from bankruptcy").

[44] Article III provides, in relevant part:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to

Court likely would find that Mar-Bow lacks standing because it has failed to establish a concrete, particularized injury-in-fact that can be redressed by the relief it seeks from this Court.

Federal district courts are courts of limited subject matter jurisdiction. *United States ex rel. Vuyvuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)). Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. As the Supreme Court of the United States has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo v. Robins*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant;[45] and[,] (3) that is likely to be redressed by a favorable judicial decision.[46]" 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally

---

Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1.

[45] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[46] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). A plaintiff cannot have standing where redressability of an injury is merely "speculative." *Id.*

protected interest that is concrete and particularized." *Dreher v. Experian Info. Sols.*, 856 F.3d 337, 343 (4th Cir. 2017) (citations and quotation marks omitted). As the party invoking federal jurisdiction, Mar-Bow bears the burden of properly alleging standing. *Lujan*, 504 U.S. at 560; *see also Balzer & Assoc., Inc. v. Union Bank & Trust*, 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 764, 768 (4th Cir. 1991)).

Mar-Bow contends that its "colorable claim to access McKinsey's connections under Rule 2014, . . . has established an injury in fact for purposes of Article III standing." (Resp. Mot. Dismiss 13.) This injury, according to Mar-Bow, is "traceable to McKinsey's filing its disclosures *in camera* or failing to disclose its connections altogether," and "would be redressed by a court order granting Mar-Bow the relief it seeks, . . . access to the *in camera* disclosures and to as-yet-undisclosed connections." (*Id.*) However, even presuming that Mar-Bow's alleged informational injury would be sufficient for Article III purposes, the relief Mar-Bow seeks in this appeal would not redress Mar-Bow's alleged harm.

On appeal here are the Bankruptcy Court orders approving McKinsey's Third Interim and Final Fee Orders. In this appeal, Mar-Bow asks this Court to "order that Mar-Bow may object and be heard on McKinsey's requests for fees, and [] reverse the bankruptcy court's approval of McKinsey's fee applications for failure to comply with Rule 2014." (Mar-Bow Br. 47.) Reversing the Bankruptcy Court's approval of the Third Interim and Final Fee Orders, granting Mar-Bow all the relief it requests, and even disgorging McKinsey's fees would not redress Mar-Bow's alleged injury: its deprivation of "access to judicial records." (Resp. Mot. Dismiss 8.) In relying on the denial of information to which it was supposedly entitled as its basis for

establishing Article III injury-in-fact, Mar-Bow drives a wedge between its alleged injury and the remedy it seeks here.

Mar-Bow's alleged informational injury (its lack of access to additional disclosures from McKinsey) is not *likely* to be redressed by the remedy it seeks (an opportunity to be heard on McKinsey's fees, and a reversal of the Bankruptcy Court's order granting those fees). *See, e.g., Lujan*, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). Mar-Bow asserts that "even a threatened denial or reduction of fees *could* force McKinsey to disclose those connections to which Mar-Bow has sought access." (Mar-Bow Br. 20.) Speculative redressability is clearly insufficient to confer Article III standing. *See In re GT Automation Grp.*, 828 F.3d F.3d 602, 604 (7th Cir. 2016) ("Standing is lacking if it is merely 'speculative'—as opposed to 'likely'—that the plaintiff's injury would be redressed by a favorable decision." (citation omitted)). Mar-Bow's creative pleading seemingly would fail. Even assuming that Mar-Bow sufficiently alleges an Article III injury-in-fact, Mar-Bow seeks nothing in this appeal of the Fee Application Rulings that would be likely to redress its alleged informational injury. *See Spokeo*, 136 S. Ct. 1540, 1547 (2016).

The Court concludes that under the well-established "person aggrieved" test consistently applied in this circuit to evaluate bankruptcy appellate standing, *see In re Urban Broad.*, 401 F.3d at 243, Mar-Bow lacks standing to appeal the Bankruptcy Court's Fee Application Rulings. And although the Court declines to apply the Article III standard to evaluate Mar-Bow's standing on appeal, Mar-Bow likely would fail to establish standing under Article III in any event.

The Court will dismiss Mar-Bow's appeal of the Fee Application Rulings.

## V. Conclusion

For the foregoing reasons, the Court will grant McKinsey's Motion to Dismiss the

Appeal of the Fee Application Rulings, (ECF No. 36), and dismiss Mar-Bow's appeal of the Fee

Application Rulings for lack of standing. The Court will dismiss Mar-Bow's appeals.[47] An

appropriate Order will issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 9 | 30 | 2017
Richmond, Virginia

---

[47] Because the Court will dismiss Mar-Bow's appeals for the reasons stated above, it need not reach the merits of Mar-Bow's numerous Rule 2014 appeals. That said, this Court sees a record replete with patient, efficient, and thorough determinations on a series of complicated matters. Certainly, the Bankruptcy Court addressed—repeatedly and comprehensively—each objection Mar-Bow presented to it. Moreover, this Court expresses no reservation about the competence or integrity with which the Bankruptcy Court reviewed McKinsey's *in camera* disclosures or declined to order that they be publicly filed.